# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:15-cr-00037-JAD-GWF |
| | ) |
| vs. | ) **FINDINGS &** |
| | ) **RECOMMENDATIONS** |
| MARC BRATTIN, | ) |
| | ) **Motion to Dismiss (#27)** |
| Defendant. | ) |
| | ) |

This matter is before the Court on Defendant Marc Brattin's Motion to Dismiss for Vindictive Prosecution, Prosecutorial Misconduct, and Double Jeopardy Violation (#27), filed on September 17, 2015. The Government filed its Response (#31) on October 5, 2015, and the Defendant filed his Reply (#35) on October 13, 2015. The Court conducted a hearing in this matter on December 10, 2015.

## BACKGROUND

Defendant Marc Brattin was previously charged in a May 10, 2013 indictment with two counts of bank fraud in violation of 18 U.S.C. 1344 and two counts of wire fraud in violation of 18 U.S.C. § 1343. *United States v. Brattin*, Case No. 2:13-cr-00161-JAD-CWH, *Indictment (#1)*. The indictment alleged that from in or about 2009 to in or about March 2013, Defendant devised a scheme and artifice to defraud purchasers and banks in regard to sale and financing of motorcycles. *Id., pg. 2,* ¶ 4. The wire fraud counts involved wire communications that occurred on January 14, 2012 and December 7, 2012. *Id., pg. 5.* On February 2, 2015, Defendant Brattin pled guilty to all four counts of the indictment without a plea agreement. *See Minutes of Proceedings (#54),* Case No. 2:13-cr-00161-JAD-CWH. On May 6, 2015, Defendant was sentenced to serve a term of

imprisonment of twenty-five (25) months per count, to run concurrently, and was placed on supervised release for four years as to counts one and two, and three years as to counts three and four, to run concurrently.  Defendant was also ordered to pay restitution in the amount of $689,080.32.  *Minutes of Proceedings (#68); Judgment of Conviction (#71)*, Case No. 2:13-cr-00161-JAD-CWH.  The indictment in this case was filed on February 4, 2015.  It charges Defendant Brattin with one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and (c)(5) (Count Two).  *Indictment (#1)*.  The charges arise out of the same fraudulent scheme charged in Case No. 2:13-cr-00161-JAD-CWH.  *Id., pg. 2*, ¶ 4.  The wire fraud count is based on a wire communication that allegedly occurred on March 26, 2010.  *Id., pg. 3*, ¶ 7.

Defendant's guilty plea in Case No. 2:13-cr-00161-JAD-CWH and his subsequent indictment in this case arise out of the parties' failed plea negotiations.[1]  Defendant argues that the Government's conduct in bringing additional charges against him constitutes vindictive prosecution and prosecutorial misconduct warranting dismissal of the indictment.  He also argues that the indictment in this case is barred by the Double Jeopardy Clause of the Fifth Amendment.  The Government argues that the parties' attempts to reach a plea or post-plea agreement were unsuccessful and that it acted properly in bringing the charges in the second indictment which are not barred by double jeopardy.

On November 6, 2014, Assistant United States Attorney Sarah Griswold sent an email to Defendant's counsel, Louis Palazzo and Ross Goodman, in which she noted that counsel had previously discussed a resolution of the charges in Case No. 2:13-cr-00161-JAD-CWH with a Guideline offense level of 20 after acceptance of responsibility and a sentencing range of 32-41 months.  Ms. Griswold stated:

> In the event your client is not interested in this proposed resolution, the government is prepared to charge your client with an additional count

---

[1]The parties' negotiations are set forth in their email exchanges.  *See Defendant's Motion (#28), Exhibits B-M, O-T* and *Government's Response (#31), Exhibits 1-57.*

1   of aggravated identity theft, which would result in an additional 24
2   month consecutive sentence, for a total Guideline range of 57-65
   months incarceration.

3   *Defendant's Exhibit B; Government's Exhibit 1.*

4   Ms. Griswold further stated that it was the U.S. Attorney's office policy that once an

5 aggravated identity theft charge is brought, it will not be dismissed absent extraordinary

6 circumstances.  For that reason the charge had not been brought earlier.  Because the statute of

7 limitations for the aggravated identity theft charge would run on November 9, 2014, Ms. Griswold

8 stated that a complaint against Defendant charging that offense would be filed on November 7, 2014,

9 unless the Defendant and his counsel executed a waiver of the statute of limitation so that the parties

10 could continue to negotiate.  *Id.*  Defendant's counsel provided a signed waiver of the statute of

11 limitations on November 7, 2014.  *Defendant's Exhibit C; Government's Exhibit 2.*

12   On November 10, 2014, the Government offered to resolve the case by Defendant agreeing to

13 a Sentencing Guidelines level of 20.  The parties could either jointly recommend a low-end

14 Guideline sentence, or Defendant could argue Section 3553 (18 U.S.C. § 3553) factors.  Defendant

15 would also be required to make full restitution to victims, which the Government calculated to be

16 $719,080.32, and admit all forfeiture allegations.  In exchange, the Government would not bring the

17 aggravated identity theft charge.  Ms. Griswold stated that the offer would remain open until

18 December 5, 2014.  *Defendant's Exhibit D; Government's Exhibit 4.*

19   On November 25 and 26, 2014, Ms. Griswold sent emails inquiring whether Defendant's

20 counsel, Mr. Palazzo, had received the Government's November 10, 2014 offer.  *Government's*

21 *Exhibits 5, 6.*  On November 26, 2014, Mr. Palazzo's office notified Ms. Griswold that he needed

22 more time to review discovery before he and his client could make a decision on the offer.  Ms.

23 Griswold reminded Mr. Palazzo that the plea offer would expire on December 5th and the statute of

24 limitations on the aggravated identity theft charge would expire on December 31st.  *Government's*

25 *Exhibit 8.*  On December 4th, the Government agreed to keep the offer open until December 19,

26 2014, provided Defendant executed another waiver of the statute of limitations through the

27 scheduled trial date of February 10, 2015.  *Government's Exhibit 9.*  Defendant and his counsel

28 executed the second waiver on December 5th.  *Defendant's Exhibit E; Government's Exhibits 10-11.*

3

1    On December 18, 2015, Ms. Griswold sent an email to Mr. Palazzo asking what his client's

2    decision was regarding the plea offer. *Government's Exhibit 12.* Mr. Palazzo responded as follows:

> He plans on entering a plea, so if you want to put together a plea agreement
> that is fine. The only issue he has any reservation about is the loss amount, as
> he believes it is overstated. I explained that there would need to be a
> significant reduction or disparity found in order to have it result in a lower
> BOL based on the loss table. Nonetheless, if you can insert some language in
> the proposed plea agreement to account for this unresolved issue as it relates
> to any restitution order and the like, such would be appreciated.

*Government's Exhibit 13.*

Ms. Griswold responded that the Government did not consider Defendant's counsel's email

an acceptance of the offer. She stated that Defendant had until December 19th to accept the offer in

which he must admit to $719,080.32 in restitution and a loss range of $400,000 to $1 million.

*Government's Exhibit 14.* Mr. Palazzo and Ms. Griswold thereupon engaged in an exchange of

emails about resolving the restitution amount, and Mr. Palazzo requested that Ms. Griswold forward

a proposed plea agreement. *Government's Exhibits 15-17.*

Ms. Griswold emailed a proposed plea agreement to Mr. Palazzo on December 19, 2014.

*Defendant's Exhibit F; Government's Exhibit 18.* The proposed plea agreement contained a

restitution amount of $719,080.32. *Id., Proposed Plea Agreement, Section IX, pg. 11.* It also stated

as follows regarding the parties' positions on sentencing:

> The parties will jointly recommend that the Court sentence the
> Defendant to a sentence at the low end of the Sentencing Guidelines
> range corresponding to the offense level agreed upon by the parties in
> Section V(B) above unless the defendant commits any act that could
> result in a loss of the downward adjustment for acceptance of
> responsibility. If the defendant commits any act that could result in a
> loss of the downward adjustment for acceptance of responsibility, the
> defendant will not request a sentence below the Sentencing Guidelines
> range corresponding to the offense level calculated in this Plea
> Agreement, and the United States may seek a sentence within the
> Sentencing Guidelines range corresponding to the offense level
> calculated in this Plea Agreement. The defendant will not seek a
> downward adjustment pursuant to 18 U.S.C. 3553 or U.S.S.G.
> 4A1.3(b)(1) for any sentence the Court may impose.

*Exhibit 18, Proposed Plea Agreement, Section VIII, pg. 11.*

On January 5, 2015, Ms. Griswold advised Mr. Palazzo that the Government had not received

the signed plea agreement and she asked him to provide the signed agreement or advise whether the

4

Defendant rejected it. *Government's Exhibit 20.* Mr. Palazzo responded by stating: "The offer is NOT rejected. The offer is accepted. I am still out of town. I will return later this week and will get it to you no later than next Monday." *Government's Exhibit 21.* On January 12th, Ms. Griswold again advised Mr. Palazzo that the signed plea agreement had not been received and that the Government would consider the offer rejected if it was not received that day. *Government's Exhibit 22.* Mr. Palazzo responded: "I am in possession of the signed plea agreement. The only remaining issue concerns the accuracy of the loss/restitution amount. In this vein, I would like to have some accommodation made in the plea agreement or a letter acknowledging this issue. Again, I am able to provide you the signed plea agreement today as promised with this caveat." *Defendant's Exhibit G; Government's Exhibit 23.*

On January 12, 2015, Ms. Griswold responded by asking Mr. Palazzo to set forth Defendant's loss and restitution issues. She further stated: "The plea agreement must be the entire agreement between the parties, and includes agreements on both loss and restitution. Please let us know by the end of the day today what the issues are regarding loss and restitution." *Defendant's Exhibit H; Government's Exhibits 24-25.* Mr. Palazzo responded with a "Top 10 List" of the loss and restitution items with which Defendant took issue. He concluded with the following statement: "Let me be clear, Marc has accepted criminal responsibility insofar as the plea agreement is concerned and has signed the plea agreement. It would seem to be in everyone's interest to ensure the accuracy of the loss/restitution amount at issue." *Government's Exhibit 26.* Ms. Griswold responded on January 13, 2015, by agreeing to reduce the loss and restitution figure to $681,080.32. She stated that if Defendant had any evidence to dispute the losses to three other victims, he should provide it immediately. *Defendant's Exhibit I; Government's Exhibit 27.* Mr. Palazzo sent an email on January 14th discussing additional loss and restitution issues, but reiterated that Defendant was accepting responsibility for the criminal conduct. *Government's Exhibit 28.*

On January 14th, the Government agreed to reduce the restitution figure to $678,579.32, although the loss figure would still remain at $681,080.32. Ms. Griswold further stated:

> The United States understands that there are, as you describe, "material elements in the context of sentencing," and cannot enter into any plea agreement in which the loss and restitution figures are not fully agreed

upon.  Given the length of negotiations in this case on these issues, going back to your client's two previous attorneys, the United States is unable to continue this discussion indefinitely.  Nor are we willing to litigate these issues at sentencing.  Accordingly, if the parties cannot agree on final loss and restitution figures by Friday, January 23, we will consider our offer rejected and will proceed in a litigation posture. We remain open to any discussions in an effort to resolve this case.

*Government's Exhibit 29.*

On January 15th, Mr. Palazzo provided some additional information regarding the loss/restitution issue for the Government's consideration.  Ms. Griswold requested proof of payment of the items that Defendant indicated had already been reimbursed.  *Government's Exhibits 30-31.*

On January 23, 2015, counsel exchanged several emails regarding the loss and restitution issue.  Mr. Palazzo sent the following email:

I have provided the currently available information impacting upon the restitution amount, which is outlined in my previous emails.  To the extent you feel it appropriate to make adjustments to the amount of restitution you will be seeking in the plea agreement, I would ask you to reflect the same in a revised plea agreement that I will have Marc Brattin sign and return to your office.

*Defendant's Exhibit K; Government's Exhibit 32.*

Ms. Griswold responded by asking Mr. Palazzo to state specifically how much loss Mr. Brattin admits to causing and how much restitution he admits he owes.   She stated that "[i]f the parties cannot agree on final loss and restitution figures, today, we will consider our offer rejected and will proceed in a litigation posture."  *Government's Exhibit 33.*  Mr. Palazzo replied by stating that Defendant had been trying to reach an agreement on an accurate figure for restitution.  He stated that if the Government was not interested in doing so then Ms. Griswold could "plug in whatever number you would like."  *Defendant's Exhibit K; Government's Exhibit 34.*  Ms. Griswold responded:

Given the history of negotiations on this issue, the government will not just plug in "whatever number [we] like."  It is clear that the defendant does not agree with our calculations.  This is why we have requested from you the numbers that he does admit.  We are unwilling to enter into a plea agreement that the defendant disputes.

*Defendant's Exhibit K; Government's Exhibit 35.*

. . .

6

1   Counsel then engaged in further exchanges and negotiations regarding the amount of loss and

2   restitution.  *Defendant's Exhibit K; Government's Exhibits 36-38.*

3   On January 30, 2015, Mr. Palazzo sent Ms. Griswold an email attaching some information

4   "impacting upon the restitution issue."  *Government's Exhibit 40.*  Ms. Griswold sent Mr. Palazzo a

5   fairly lengthy email setting forth the Government's review of the loss and restitution issue and

6   attaching documents relating to that issue.  She also attached "(2) a third statute of limitations tolling

7   agreement, this time tolling the statute of limitations not only for aggravated identity theft, but also

8   for wire fraud, (3) an updated spreadsheet of loss and restitution reflecting the results of the FBI's

9   investigation; and (4) a new attached plea agreement."  *Government's Exhibit 41.*  Ms. Griswold's

10  email further stated:

11          The proposed plea agreement incorporates the updated loss and
            restitution figures.  It also contains additional specific factual
12          admissions in the fact section.  As with the prior agreement, this
            agreement provides that the parties will jointly recommend a low-end
13          Guidelines sentence and does not allow Mr. Brattin to seek a below-
            Guidelines sentence.  In light of the concessions regarding the
14          aggravated identity theft count, Mr. Brattin must agree not to seek a
            below-Guidelines sentence.  Please let me know if you have any
15          questions or concerns.

16  *Government's Exhibit 41.*

17  The attached proposed plea agreement contained a restitution amount of $668,794.46.  *Id.,*

18  *Exhibit 41, Proposed Plea Agreement, Section IX, pg. 13.*  It also contained the same language

19  regarding the parties' positions on sentencing that were contained in the first proposed plea

20  agreement.  *Id., Section VIII, pg. 12.*

21  Mr. Palazzo responded to Ms. Griswold's email as follows:

22          I have not yet looked at the documents which you attached, but I can
            tell you that your new proposal wherein you assert that the
23          "concession" of not pursuing an aggravated identity theft count
            requires Marc Brattin to agree to not seek a below guideline sentence
24          is not agreeable or workable and constitutes the introduction of a
            material and substantive deviation from the terms which were
25          previously relied upon and conveyed to the client and signed off by
            him as embodied in the plea agreement previously tendered by your
26          office.

27  *Defendant's Exhibit M; Government's Exhibit 42.*

28  . . .

7

Mr. Palazzo further stated that "[t]he discussion has always included an ability to argue 3553 factors, potentially resulting in a variance to be ultimately determined by the Court. We must insist that this remain a component of the terms of the revised plea agreement." *Id.* Ms. Griswold responded to this email by stating: "Check the previous plea agreement. The sentencing position is the same." *Defendant's Exhibit M; Government's Exhibit 43.*

Mr. Palazzo replied:

> The deal of which we spoke was a proposal to jointly recommend low end or if I wanted to argue 3553 you would be permitted to argue for a sentence within the range of the adjusted base offense level.
>
> I told you then and have always maintained I want to have the liberty of arguing 3553 factors so the judge has the discretion to grant a variance if she chooses to do so. I would NEVER lock myself into a guideline sentence, in the face of the guidelines being advisory, and but one of many factors for the court to consider in crafting a reasonable and appropriate sentence. Frankly, I would consider that ineffective assistance of counsel and malpractice.

*Defendant's Exhibit M; Government's Exhibit 44.*

On January 30th, Ms. Griswold responded: "That is not what you said your client agreed to. Before our office decides how to proceed with your new position, we need to know whether you or your client have any other objections to the proposed plea agreement." *Defendant's Exhibit M; Government's Exhibit 45.* Mr. Palazzo stated: "Let me be clear, this is not 'my new position' this is what we spoke of from the time a plea agreement was discussed as a proposed resolution of this case. I will look at it and get back to you." *Defendant's Exhibit M; Government's Exhibit 46.*

On Monday February 2, 2015 at 11:56 A.M., Ms. Griswold sent an email to Mr. Palazzo stating: "I haven't heard back from you regarding whether you or your client have any additional objections to the proposed plea agreement. I have let Donna know that as of this morning we do not have an agreement. Please let me know what your client intends to do." *Government's Exhibit 47.* Mr. Palazzo left a voice mail message for Ms. Griswold at 12:24 P.M. stating that the proposed plea agreement still had the language prohibiting Defendant from arguing the § 3553 factors which was not consistent with the agreement that they had. *Government's Exhibits 48A, 48B.*

Calendar call in Case No. 2:13-cr-00161-JAD-CWH was scheduled for February 2, 2015 at 1:30 P.M. *Order Regarding Trial (#52).* The minutes reflect that the February 2nd hearing with

respect to Defendant Brattin occurred from 2:40 to 3:15 P.M.  *Minutes of Proceedings (#54).*  The Government states that prior to the case being called, Defendant's counsel informed the Government that Defendant intended to plead guilty without the benefit of a plea agreement.  The Government then filed a Memorandum Regarding Defendant Marc Brattin's Plea Without Benefit of a Plea Agreement "to aid the Court in advising the defendant of the consequences of a guilty plea under Federal Rule of Criminal Procedure 11."  *Response (#31), pg. 5.*[2] During the colloquy with the District Judge, Defendant stated that he understood he was pleading guilty without the benefit of a plea agreement.  *Id., pgs. 5-7.  See also Transcript of Proceedings (#57)* in Case No. 2:13-cr-00161-JAD-CWH.

Defendant states in his motion that "[b]ased upon AUSA Griswold's unwillingness to honor the agreement that had been reached between the parties which would permit Mr. Brattin to argue Section 3553(a) factors to the court in furtherance of seeking a downward variance of any sentence; in order to avoid the specter of a two year consecutive sentence stemming from an Aggravated Identity Theft charge, Mr. Brattin was left with no alternative but to plead straight up to the indictment without the benefit of a plea agreement."  *Motion (#27), pg. 5;15-20.*

On February 2, 2015 at 4:14 P.M., approximately an hour after the plea hearing concluded, Ms. Griswold sent the following email to Mr. Palazzo:

> The statute of limitations on the aggravated identity theft count runs on February 10, 2015.  As I explained at calendar call this afternoon, our Office needs either (1) to toll the statute on that count and on any wire fraud counts that would expire after February 10 or (2) to go to the grand jury on such charges.  Given Mr. Brattin's plea this afternoon, our Office would prefer to toll the statute of limitations.  You indicated that because the trial would be vacated after the plea, that you would not enter into a tolling agreement.  I do not understand the reasoning, since the statutes will still run without an agreement.  I am attaching the tolling agreement I sent you Friday.  If you and your client agree to it please send it back fully executed as soon as possible.  Thank you.

*Defendant's Exhibit O; Government's Exhibit 49.*

---

[2]*See also United States' Memorandum Regarding Defendant Marc Brattin's Plea Without Benefit of Plea Agreement (#53)*, and *Transcript of Proceedings (#57)* in Case No. 2:13-cr-00161-JAD-CWH.  The Government's memorandum stated that as a result of Defendant's fraud, he caused losses to individuals and entities totally $689,080.32.  *Memorandum (#53), pg. 9.*

Mr. Palazzo responded by email at 4:54 P.M. on February 2, 2015.  After discussing the proposed statute of limitations tolling agreement and the unlikely possibility that Mr. Brattin would withdraw his guilty plea, Mr. Palazzo stated:

> I have lived up to everything I said I would do, including agreeing to the loss amount you proposed, without the benefit of a plea agreement; I gave you your factual recitation in support of the guilty plea, again without the benefit of a plea agreement.  I effectively, had to request my client to forego a plea agreement because you were unwilling to provide the flexibility of permitting us the opportunity to argue 3553 factors, despite an original agreement to allow the same.
>
> If it is truly your intention to pursue additional potential charges only in the event Marc Brattin seeks to withdraw his plea and pursue the matter to trial, then I would ask that that be reflected in the newly proposed tolling agreement, as an expressly defined condition precedent.  I also believe that the tolling agreement should be scheduled to expire at a time in close temporal proximity to the sentencing date of May 5, 2015.

*Defendant's Exhibit P; Government's Exhibit 50.*

On February 3, 2015, at 10:34 A.M., Ms. Griswold sent the following email to Mr. Palazzo:

> Attached is a proposed post-plea agreement that I believe addresses both parties' concerns.  Our Office does not intend to proceed against your client on new charges if he is convicted on all counts in the current case and does not appeal his conviction.  The appellate timeline dictates our proposed waiver end date.  If your client will agree to an appellate waiver, we would be able to shorten the waiver period as set forth in the proposed agreement.  To be clear, we did not change our position or violate some oral agreement.  Nevertheless, we are willing to enter into the attached proposed post-plea agreement.  If you and your client agree to the agreement, please return a fully executed copy today and we will sign it as well and get you a copy today.  Thank you.

*Defendant's Exhibit Q; Government's Exhibit 51.*

The proposed post-plea agreement provided for Defendant to waive the statute of limitations for aggravated identity theft and wire fraud and to waive his appeal and post-conviction proceedings with respect to the charges he pled guilty to on February 2, 2015.  *Defendant's Exhibit R; Government's Exhibit 51.*  The proposed post-plea agreement further stated:

> In exchange for Marc Brattin's agreement set forth above, the United States Attorney's Office for the District of Nevada agrees that it will not bring any additional charges against Marc Brattin arising out of the investigation in the District of Nevada which culminated in Mr. Brattin pleading guilty to all counts in *United States v. March (sic) Brattin*, Case No. 2:13-cr-161-JAD-CWH, and based on conduct known to the United States, if the following conditions are met no later than May 15,

10

2015: (1) the judgment is entered in *United States v. Marc Brattin*, Case No. 2:13-cr-161-JAD-CWH; and (2) said judgment reflects that Marc Brattin is adjudicated guilty of counts 1, 2, 3 and 4 of the Criminal Indictment. The parties agree that if these conditions are not met by May 15, 2015, the United States may bring additional charges against the defendant.

*Defendant's Exhibit R; Government's Exhibit 51.*

On February 4, 2015 at 5:06 P.M., Mr. Palazzo sent the following email to Ms. Griswold:

I have had a chance to review the post plea agreement you supplied me yesterday afternoon. Please include clarifying language that the Government will be affirmatively recommending a 3 level downward adjustment for acceptance of responsibility. Notwithstanding the fact that the proposed tolling agreement extends the statute of limitations to August 2015, the last paragraph makes mention of a requirement that a judgment of conviction be entered by May 15, I think there should be clarifying language included in the event the sentencing is continued for some unforeseen reason that such will not result in additional charges being pursued against Marc.

*Defendant's Exhibit S; Government's Exhibit 56.*

Ms. Griswold responded a few minutes later at 5:11 P.M., stating:

Unfortunately the parties were not able to resolve the issues addressed in the proposed Post-Plea Agreement I sent you yesterday morning before our Office went to the grand jury today. As the grand jury returned an indictment, the issues are now moot. A few minutes ago, I sent you the summons for your client to appear in federal court on February 11, 2015 at 3:00 in courtroom 3C. I am reattaching it to this email. Please convey this information to him. Thank you.

*Defendant's Exhibit T; Government's Exhibit 57.*

No further negotiations occurred between the parties after Ms. Griswold's February 4th email. During Defendant Brattin's sentencing hearing in Case No. 2:13-cr-161-JAD-CWH on May 6, 2015, the Court determined that the Sentencing Guidelines level was 22, which gave a Guidelines sentencing range of 41 to 51 months. *Transcript of Proceedings (#77), pg. 37:14-17.* In imposing sentence, the District Judge stated that she "[was] not considering anything that happened or did not happen during plea negotiations." *Id., pg. 43:10-14.* The District Judge also discussed the indictment filed in this case, but stated that she would not consider the charges filed in this case in formulating a sentence, and "that whatever happens with that case should be dealt with in the context of that case." *Transcript of Proceedings (#77), pg. 42:9-23.* As stated above, she sentenced defendant to a term of imprisonment of 25 months on all counts to run concurrently, and ordered him

11

1  to pay restitution in the amount of $689,080.32.

2         On May 13, 2015, Defendant's appellate counsel filed a notice of appeal in Case No. 2:13-cr-

3  00161-JAD-CWH.  *Notice of Appeal (#73).*  The briefing on the appeal is complete and the Ninth

4  Circuit has granted Appellant's motion to expedite the appeal.  *See Copy of Order (#102).*  During

5  the December 10, 2015 hearing in this case, Mr. Palazzo stated that if charges in this indictment are

6  dismissed, Defendant Brattin will dismiss his appeal in Case No. 2:13-cr-00161-JAD-CWH.

7                                    **DISCUSSION**

8         **1.    Whether the aggravated identity theft charge is barred by the Double**
              **Jeopardy Clause.**

9

10        The Fifth Amendment to the United States Constitution provides that no person shall "be

11  subject for the same offense to be twice put in jeopardy of life or limb."  Defendant Brattin argues

12  that the aggravated identity theft charge in the indictment in this case is barred by the Double

13  Jeopardy Clause based on his prior conviction for bank fraud in Case No. 2:13-cr-00161-JAD-

14  CWH.[3]  The Government argues that the charge is not barred because it requires proof of different

15  elements than the previous charges of bank fraud to which Defendant pled guilty.

16        In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932), the Supreme

17  Court stated that the Double Jeopardy Clause is not violated where the same act or transaction

18  constitutes a violation of two distinct statutory provisions, and where each statute requires proof of a

19  fact or element that the other does not.  Defendant does not argue that the aggravated identity theft

20  charged is barred under the *Blockburger* test.  Relying on *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct.

21  2084 (1990), however, he argues that *Blockburger* is not determinative as to whether the subsequent

22  prosecution in this case violates the Double Jeopardy Clause.

23        The Court in *Grady v. Corbin*, stated that the Double Jeopardy Clause protects against a

24  second prosecution for same offense after acquittal or conviction, and it protects against multiple

25  punishments for the same crime.  *Id.*, 495 U.S. at 516, 110 S.Ct. at 2090.  In a five-to-four decision, a

26  majority of the Court stated that the *Blockburger* test, which was developed in the context of

27

28        [3]Although aggravated identity theft may also be predicated on a wire fraud felony, the charge in this case
    is based only on the underlying bank fraud felony.  *Indictment (#1), pg. 4*, ¶ 9.

1    multiple punishments imposed in a single prosecution, was not the exclusive test for determining

2    whether the Double Jeopardy Clause bars *successive* prosecutions for the same conduct.  *Id.*, 495

3    U.S. at 516, 110 S.Ct. at 2090-91.  The Court stated that successive prosecutions raise concerns that

4    extend beyond merely the possibility of an enhanced sentence where multiple charges for the same

5    conduct are brought in one case.  The Court stated that the government "should not be allowed to

6    make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to

7    embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and

8    insecurity."  *Grady*, 495 U.S. at 518, 110 S.Ct. at 2091, quoting *Green v. United States*, 355 U.S.

9    184, 187, 78 S.Ct. 221, 223.  Multiple prosecutions also give the government an opportunity to

10   rehearse its presentation of proof, thus increasing the risk of erroneous convictions for one or more

11   offenses charged.  495 U.S. at 518, 110 S.Ct. at 2092.  The Court stated that to determine whether a

12   subsequent prosecution is barred by the Double Jeopardy Clause, the court must first apply the

13   *Blockburger* test.  If that test reveals that the offenses have identical statutory elements or that one is

14   a lesser included offense of the other, then the subsequent prosecution is barred.  495 U.S. at 516,

15   110 S.Ct. at 2090.  If *Blockburger* does not bar the prosecution, however, it is nevertheless barred if

16   in order to prove an essential element of the charged offense, the government "will prove conduct

17   that constitutes an offense for which the defendant has already been prosecuted."  495 U.S. at 521,

18   110 S.Ct. at 2093.

19        The dissent in *Grady* argued that the majority opinion overturned long established precedent

20   that supported the *Blockburger* test as the definitive test for application of the Double Jeopardy

21   Clause.  The dissent also argued that the additional test established by the majority was vague and

22   unworkable.  *Grady*, 495 U.S. at 526-44, 110 S.Ct. at 2096-2105.  Three years after *Grady*, the

23   dissenting view prevailed.  The Court overruled *Grady* and held that the *Blockburger* test is the

24   standard for determining whether a subsequent prosecution is barred by the Double Jeopardy Clause.

25   *United States v. Dixon*, 509 U.S. 688, 703-12, 113 S.Ct. 2849, 2859-64 (1993).  Thus, whatever the

26   merit the rule established in *Grady* had, it was short-lived.  Pursuant to *Dixon*, this court is required

27   to apply the *Blockburger* test in determining whether the Double Jeopardy Clause bars the current

28   prosecution.

Bank Fraud is defined in 18 U.S.C. § 1344 as follows:

> Whoever knowingly executes, or attempts to execute a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises;
>
> Shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

To establish the crime of bank fraud, the government must prove beyond a reasonable doubt that (1) the defendant knowingly executed a scheme to defraud a financial institution as to a material matter; (2) the defendant did so with the intent to defraud the financial institution; and (3) the financial institution was insured by the Federal Deposit Insurance Corporation. *Ninth Circuit Model Jury Instruction 8.125* (2015).

Aggravated Identity Theft is defined in 18 U.S.C. § 1028A(a)(1) as follows:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. 1028A(c)(5) states:

> For purposes of this section, the term "felony violation enumerated in section (c)" means any offense that is a felony violation of—
>
> > (5) any provision contained in chapter 63 (relating to mail, bank and wire fraud)[.]

To establish the crime of aggravated identity theft, the government must prove beyond a reasonable doubt that (1) the defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person; (2) the defendant knew that the means of identification belonged to a real person; and (3) the defendant did so during and in relation to a felony crime of [bank fraud]. *Ninth Circuit Model Jury Instruction 8.83 (2015).*

The elements of aggravated identity theft cleary differ from those of bank fraud because in addition to proving the elements of bank fraud, the Government must prove that the Defendant

14

1   knowingly transferred, possessed or used without legal authority a means of identification of another

2   person and knew that the means of identification belonged to a real person.  This conclusion is

3   supported by the analogous issue decided in *United States v. Gonzalez*, 800 F.2d 895, 897 (9th Cir.

4   1986).  The defendant in *Gonzalez* was charged in the same indictment with armed bank robbery in

5   violation of 18 U.S.C. § 2113(a) and (d), and with use of a firearm to commit a crime of violence in

6   violation of 18 U.S.C. § 924.  In holding that the two statutes meet the *Blockburger* test (i.e., do not

7   violate double jeopardy), the court stated:  "The statutory elements of 18 U.S.C. §§ 2113(a) and (d)

8   not required to be proved for a conviction under § 924(c) include the taking of money from a bank

9   and an assault or jeopardizing the life of another.  The statutory element of 18 U.S.C. § 924(c) not

10  part of §§ 2113(a) and (d) is the use or carriage of a firearm."  800 F.2d at 898.

11       Similar to 18 U.S.C. § 924, the crime of aggravated identity theft provides for the imposition

12  of an additional sentence for the commission of an underlying felony, in this case bank fraud.

13  Because additional elements must be proved to establish aggravated identity theft, however, the

14  prosecution of Defendant on that charge is not barred by his prior convictions for bank fraud.

15  Defendant does not expressly challenge the pending wire fraud count on double jeopardy grounds.

16  That count is based on a wire communication that was not charged in the previous indictment and

17  therefore is also not barred on double jeopardy grounds.

18       **2.   Whether the indictment should be dismissed based on the doctrines of**
         **vindictive prosecution or prosecutorial misconduct in violation of the Due**
19       **Process Clause or pursuant to the Court's supervisory powers.**

20       Defendant Brattin moves for dismissal of the indictment based on the Due Process doctrines

21  of "vindictive prosecution" and "outrageous government conduct."  Defendant also argues that the

22  Court should dismiss the indictment pursuant to its supervisory powers.

23       *United States v. Kent*, 649 F.3d 906, 912 (9th Cir. 2011) states that:

24              "A prosecutor violates due process when he seeks additional charges
                solely to punish a defendant for exercising a constitutional or statutory
25              right."  *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir.
                2000) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663,
26              54 L.Ed.2d 604 (1978).  A defendant may establish vindictive
                prosecution (1) "by producing direct evidence of the prosecutor's
27              punitive motivation . . . ," *United States v. Jenkins*, 504 F.3d 694, 699
                (9th Cir. 2007), or (2) by showing that the circumstances establish a
28              "reasonable likelihood of vindictiveness," thus giving rise to a

15

presumption that the Government must in turn rebut, *United States v. Goodwin*, 457 U.S. 368, 373, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

The Supreme Court in *Goodwin* explained that because the imposition of punishment is the very purpose of virtually all criminal proceedings, the presence of punitive motivation does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal protected activity. Because motives are complex and difficult to prove, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court will presume an improper vindictive motive. 457 U.S. at 372-73, 102 S.Ct. at 2488. "Given the severity of such a presumption, however—which may operate in the absence of any actual proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists." 457 U.S. at 373, 102 S.Ct. at 2488. In those cases in which a presumption applies, the Government may overcome the presumption by "objective evidence justifying the prosecutor's action." *Goodwin*, 457 U.S. at 376 n. 8, 102 S.Ct. at 2485; *United States v. Jenkins*, 504 F.3d 694, 701 (9th Cir. 2007). Even absent a presumption, a defendant might still be able to prove objectively that the prosecutor's charging decision was actually motivated by a desire to punish the defendant "for doing something that the law plainly allowed him to do." 457 U.S. at 384, 102 S.Ct. at 2494. The Court agreed with the Government, however, that "'only in a rare case would the defendant be able to overcome the presumptive validity of the prosecutor's actions through such a demonstration.'" 457 U.S. at 385 n. 19, 102 S.Ct. at 2494.

*Kent* states that the Government's conduct in filing additional charges in the context of unsuccessful plea negotiations does not support a presumption of vindictive prosecution:

> [I]n the plea negotiation context, the prosecutor's latitude to threaten harsher charges to secure a plea agreement advances the interest in avoiding trial shared by the prosecutor, defendant and the public. *Bordenkircher*, 434 U.S. at 381, 102 S.Ct. 2485. Finally, prompting prosecutors to file the harshest possible charges at the outset "would [cause] prejudic[e] to defendants, for an accused 'would bargain against a greater charge, face the likelihood of increased bail, and run the risk that the court would be less inclined to accept a bargained plea.'" *Goodwin*, 457 U.S. at 378 n. 10, 102 S.Ct. 2485 (quoting *Bordenkircher*, 434 U.S. at 368, 98 S.Ct. 663 (Blackmun, J.,

16

dissenting)).  Allowing prosecutors the leeway at first to withhold more severe charges also spares defendants damage to their reputation that could result from the piling on of charges.  *Id.*  For these reasons, the prosecutor's "initial [charging] decision should not freeze [his or her] future conduct."  *Goodwin*, 457 U.S. at 382, 102 S.Ct. 2485.

*Kent*, 649 F.3d at 913.

The court stated that in the context of pretrial plea negotiations "vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right.'" *Kent*, 649 F.3d at 913, quoting *Gamez-Orduno*, 235 F.3d at 462.

The defendant in *Kent* was charged with conspiracy to possess and possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii).  The government did not initially file an information pursuant to 21 U.S.C. § 851 which would have raised the penalty range for defendant's sentence from 5 to 40 years, to 10 years to life imprisonment.  The prosecutor thereafter informed defendant's counsel that the government sought defendant's cooperation as part of a plea agreement, and that the government would file the § 851 information if defendant "pushed the case toward trial."  649 F.3d at 910. Defendant's counsel informed the prosecutor that defendant intended to unconditionally plead guilty to the charges in the indictment and that he was not interested in a cooperation agreement.  The prosecutor informed defendant's counsel that the government would file the § 851 information unless defendant agreed to cooperate.  The government subsequently filed the information. Defendant thereafter pled guilty and was sentenced to a minimum term of 10 years.  *Id.*, at 910-11. Based on these circumstances, the court rejected defendant's assertion of vindictive prosecution.

In *United States v. Gamez-Ordunez*, 235 F.3d 453, 462-63 (9th Cir. 2000), the court also refused to find prosecutorial vindictiveness where the government filed sentence-enhancing informations against the defendants after they did not accept the government's plea offers.  The defendants argued that informations were vindictive because they were filed shortly after the defendants filed motions to suppress evidence.  The court found, however, that the informations were filed as the result of ongoing, but unsuccessful, plea negotiations and therefore were not vindictive.

. . .

17

1    Defendant also argues that an indictment may be dismissed on the ground of "outrageous

2    government conduct" which amounts to a violation of the Due Process Clause.  Even if the conduct

3    does not rise to the level of a due process violation, the court, in some circumstances, may dismiss an

4    indictment under its supervisory powers.  *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir.

5    2008), citing *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991).  Dismissal

6    based on a violation of due process is limited to extreme cases in which the government's conduct

7    violates fundamental fairness and is shocking to the universal sense of justice.  *United States v.*

8    *Black,* 733 F.3d 294, 302 (9th Cir. 2013), *United States v. Stinson*, 647 F.3d 1196, 1209-10 (9th Cir.

9    2011) and *United States v. Williams*, 547 F.3d 1187, 1199 (9th Cir. 2008).  To dismiss an indictment

10   on this basis requires that defendant meet an "extremely high standard."  *Black, supra*, 733 F.3d at

11   302.  The court in *Black* noted that there are only two reported decisions in which federal appellate

12   courts have reversed convictions based on outrageous government conduct.  *Id.*

13   In regard to dismissal under the court's supervisory powers, *Chapman* states that the court

14   has the power "'to implement a remedy for the violation of a recognized statutory or constitutional

15   right; to preserve judicial integrity by ensuring that a jury verdict rests on appropriate considerations

16   validly before a jury; and to deter future illegal conduct.'"  547 F.3d at 1085, quoting *United States v.*

17   *Simpson*, 927 F.3d 1088, 1090 (9th Cir. 1991).  While a court may dismiss a prosecution to preserve

18   judicial integrity, it does not have authority to supervise out-of-court executive procedure in the

19   absence of a constitutional or statutory violation.  *United States v. Struckman*, 611 F.3d 560, 576 (9th

20   Cir. 2010).

21   In this case, the Assistant United States Attorney, Ms. Griswold, re-opened plea negotiations

22   on November 6, 2014, by noting that counsel had previously discussed a resolution of the charges

23   with a Guidelines offense level of 20 after acceptance of responsibility and a sentencing range of 32-

24   41 months incarceration.  Ms. Griswold stated that if the Defendant was not interested in the

25   proposed resolution, the Government would seek to charge him with aggravated identity theft which

26   would result in an additional 24 month consecutive sentence.  Ms. Griswold also warned that once an

27   aggravated identity theft charge is brought, it is the Government's policy not to dismiss the charge

28   absent extraordinary circumstances.  *Defendant's Exhibit B; Government's Exhibit 1.*  Ms.

1   Griswold's conduct in proposing a plea agreement coupled with the threat of additional and

2   irrevocable charges if the Defendant did not enter into a plea agreement, does not give rise to a

3   presumption of vindictiveness.

4         Defendant and his counsel responded to the Government's proposal by executing the written

5   waiver of the statute of limitations so that the parties could negotiate a plea agreement.  On

6   November 10, 2014, Ms. Griswold emailed to Mr. Palazzo a plea offer that had three basic elements:

7   (1) a Sentencing Guidelines offense level of 20; (2) the parties would either jointly recommend a

8   low-end Guidelines sentence, or Defendant could argue Section 3553 factors; and (3) the Defendant

9   would make full restitution in the amount of $719,080.32.  *Defendant's Exhibit D; Government's*

10  *Exhibit 4.*  Defendant's counsel did not timely respond to the Government's offer which necessitated

11  further extensions of the offer deadline and the statute of limitations waiver.  On December 18, 2014,

12  Mr. Palazzo informed Ms. Griswold that Defendant intended to enter a plea.  Mr. Palazzo raised the

13  amount of restitution as the only issue that existed between the parties.  He invited Ms. Griswold to

14  "put together a plea agreement" and requested that she put some language in the agreement "to

15  account for this unresolved issue as it relates to any restitution order and the like. . . ."  *Government's*

16  *Exhibit 13.*

17        After a further exchange of emails regarding the restitution issue, Ms. Griswold emailed a

18  proposed plea agreement to Mr. Palazzo on December 19, 2014 which contained a restitution amount

19  of $719,080.32 and provided that the parties would jointly recommend a sentence at the low end of

20  the Sentencing Guidelines range and that Defendant would not seek a below Guidelines sentence

21  pursuant to 18 U.S.C. § 3553 or U.S.S.G. 4A1.3(b)(1).  *Government's Exhibit 18, Proposed Plea*

22  *Agreement.*  Defendant's counsel has insisted that he informed Ms. Griswold early in the

23  negotiations that he wanted to argue for a below Guidelines sentence based on the 18 U.S.C. § 3553

24  factors, and that this was a required condition of the plea agreement.  Ms. Griswold has denied any

25  recollection that Defendant's counsel made such a statement prior to January 30, 2015.  She

26  acknowledged, however, the December 19th proposed plea agreement was not based on any specific

27  agreement by Mr. Palazzo that the parties would jointly recommend a low Guidelines range

28  sentence.  Nor did she inform Mr. Palazzo at that time that the Government was unwilling to permit

19

1   Defendant to argue for a below Guidelines sentence based on the § 3553 factors.  The proposed plea

2   agreement simply contained the Government's offer regarding the amount of restitution and for a

3   joint sentencing recommendation.

4        The Court cannot find on this record that Mr. Palazzo, in fact, informed Ms. Griswold prior

5   to December 19, 2014 that Defendant's right to argue for a below Guidelines sentence was a required

6   condition of the plea agreement.  He did not memorialize this position in any contemporaneous

7   written communication to the Government and there is nothing in Ms. Griswold's communications

8   that suggests that she was aware that Mr. Palazzo had chosen this option.  Assuming that Mr.

9   Palazzo, in fact, wanted to argue for a below Guidelines sentence, however, it is clear that he did not

10   read the proposed plea agreement before he advised Ms. Griswold on January 12, 2015 that he was

11   "in possession of the signed plea agreement" and "[t]he only remaining issue concerns the accuracy

12   of the loss/restitution amount."  *Defendant's Exhibit G; Government's Exhibit 23.*  Given Mr.

13   Palazzo's statements, it was reasonable for Ms. Griswold to believe that Defendant agreed to the

14   provision regarding the joint sentencing recommendation.  The fault for this misunderstanding lies

15   with Mr. Palazzo.

16        The attorneys continued to negotiate the loss and restitution amounts up to Friday, January

17   30, 2015 when Ms. Griswold sent her email addressing the loss and restitution issues, and attached a

18   third statute of limitations tolling agreement, and a new proposed plea agreement.  Ms. Griswold

19   stated in her January 30th email:  "As with the prior agreement, this agreement provides that the

20   parties will jointly recommend a low-end Guidelines sentence and does not allow Mr. Brattin to seek

21   a below-Guidelines sentence.  In light of the concessions regarding the aggravated identity theft

22   count, Mr. Brattin must agree not to seek a below-Guidelines sentence."  *Government's Exhibit 41.*

23   Mr. Palazzo promptly responded by rejecting this "new proposal" which he claimed constituted "the

24   introduction of a material and substantive deviation from the terms which were previously relied

25   upon and conveyed to the client and signed off by him as embodied in the plea agreement tendered

26   by your office."  *Defendant's Exhibit M; Government's Exhibit 42.*  Ms. Griswold correctly replied

27   that the sentencing position was the same as set forth in the first proposed plea agreement.

28   *Defendant's Exhibit M; Government's Exhibit 43.* The attorneys engaged in further exchanges on

1   this issue late into the evening of January 30th.  *See Government's Exhibits 44-46.*

2        It is not clear why the parties were unable to overcome their differences regarding the

3   sentencing provision prior to calendar call on Monday afternoon, February 2, 2015.  Perhaps

4   frustration and mutual distrust prevented an agreement from being reached.  In any event, Defendant

5   Brattin elected to plead guilty without a plea agreement.  In pleading guilty, Mr. Brattin admitted

6   under oath to the factual allegations set forth in the Government's Memorandum Regarding

7   Defendant Marc Brattin's Plea Without Benefit of Plea Agreement (#53).  *See Transcript of*

8   *Proceedings (#57), pgs. 13-22.*  He also admitted that he caused losses totaling at least $689,080.32

9   which was the amount of loss set forth in the Government's memorandum and the second proposed

10  plea agreement.  *Memorandum (#53), pg. 9; Government's Exhibit 41.*[4]  As a result of pleading

11  guilty without a plea agreement, Defendant Brattin was free to argue for a sentence below the

12  Sentencing Guidelines range.

13       After Defendant pled guilty on February 2nd, Ms. Griswold advised Mr. Palazzo that the

14  Government was willing to enter into a post-plea agreement not to pursue additional charges against

15  Defendant so long as he did not withdraw his guilty plea and did not appeal from his conviction and

16  sentence.  *Government's Exhibit 51.*  Ms. Griswold emailed the proposed post-plea agreement to Mr.

17  Palazzo at 10:34 A.M. on Tuesday February 3, 2015 and requested that he "return a fully executed

18  copy today and we will sign it as well and get you a copy today."  *Id.*  Under the existing tolling

19  agreement, the statute of limitations on the aggravated identity theft charge was set to expire on

20  Tuesday February 10, 2015.  *Government's Exhibit 10.*  The proposed post-plea agreement extended

21  the statute of limitations waiver through June 5, 2015 which was 30 days after the scheduled

22  sentencing date.

23       Ms. Griswold did not inform Mr. Palazzo in her February 3rd email that the Government

24

25        [4]The second proposed plea agreement provided for restitution in the amount of $668,794.46.  As a result
    of Defendant's guilty plea without a plea agreement, the Government was free to argue for a higher restitution
26  amount at sentencing.  At sentencing, the Government argued for restitution in the amount of $762,819.88.
    *Transcript of Proceedings (#77), pg. 8.*  Defendant disputed that amount, but stood by the $689,080.32 he
27  admitted to at the time of his guilty plea and the Court ordered Defendant pay restitution in that amount.  *Id., pg.*
    *14; Judgment of Conviction (#71), pg. 5.*
28

intended to seek an indictment against Defendant on Wednesday February 4th if the executed post-plea agreement was not returned to her on February 3rd.[5]  It appears that Mr. Palazzo had gone out of town, as his law partner left Ms. Griswold a telephone voice mail message at 12:35 P.M. on February 4th stating that Mr. Palazzo was on an airplane.  At 5:07 P.M. that day, Mr. Palazzo sent an email to Ms. Griswold requesting modifications to the proposed post-plea agreement.  By that time, however, the Government had already obtained the indictment against Defendant for wire fraud and aggravated identity theft charges.  *See February 4, 2015 Minutes of Court (#3) Re; Grand Jury Return at 1:56-1:58 P.M.*, Case No. 2:15-cr-00037-JAD-GWF.

Neither Ms. Griswold nor the Government engaged in vindictive prosecution or prosecutorial misconduct up through February 3, 2015 when Ms. Griswold emailed the post-plea agreement to Mr. Palazzo.  Even if Ms. Griswold had refused to modify the proposed plea agreement prior to Defendant's guilty plea on February 2nd to allow him to argue for a below Guidelines range sentence, her post-plea offer to not pursue further charges against Mr. Brattin, so long as he did not withdraw his guilty plea and waived his right to appeal, is certainly contrary to any intention to punish the Defendant for exercising a constitutional or statutory right.  The issue therefore comes down to whether the indictment should be dismissed because Ms. Griswold did not inform Defendant's counsel on February 3, 2015 that the Government would seek an indictment the next day if the executed post-plea agreement was not returned on February 3rd, and by terminating further negotiations once the second indictment was filed.

In this Court's view, reason and fairness call for the Government to voluntarily dismiss the indictment on the condition that Defendant Brattin dismiss his appeal in Case No. 2:13-cr-00161-JAD-CWH and accept the finality of his conviction and sentence in that case.  First, as stated above, Ms. Griswold did not clearly notify Mr. Palazzo on February 3, 2015 that the the Government would obtain an indictment the next day if the signed post-plea agreement was not returned on February 3rd.  It also appears that the Government could have obtained an indictment of Defendant on

---

[5]The grand juries in this district generally meet on Tuesdays and Wednesdays.  Absent a further tolling agreement, the Government would have had to obtain an indictment against Defendant on Wednesday, February 4th, or on the following Tuesday, February 10, 2010.

1   February 10, 2015 if the post-plea agreement was not finalized by that date.[6]  Thus, it was not

2   absolutely necessary that the Government obtain an indictment on February 4th in the event the post-

3   plea agreement was not finalized.  Second, the modifications to the post-plea agreement that Mr.

4   Palazzo requested on February 4th were not major and did not contradict the material terms of the

5   agreement.

6          Third, despite the delays and confusion caused by Defendant's counsel and the

7   understandable frustration of Government's counsel in attempting to finalize a plea agreement, the

8   Government has obtained all of the objectives it sought in the initial plea offer it made on November

9   10, 2014 and in the proposed post-plea agreement it offered on February 3, 2015.  Defendant pled

10  guilty to counts one through four of the indictment in Case No. 2:13-cr-00161-JAD-CWH and

11  admitted all of the factual allegations in the Government's Memorandum Regarding Defendant Marc

12  Brattin's Plea Without Benefit of Plea Agreement (#53), including the amount of loss caused by his

13  fraudulent conduct.  Although the Government argued for a higher restitution amount at sentencing,

14  the amount of restitution ordered by the Court was greater than the restitution amount in the second

15  plea agreement that the Government proposed on January 30, 2015.  Defendant Brattin was

16  successful in obtaining a below Guidelines range sentence.  This, however, was anticipated by the

17  original plea offer on November 10, 2014, as well as in the February 2, 2015 proposed post-plea

18  agreement.  During sentencing, Ms. Griswold argued that Defendant's statements called into

19  questioning his acceptance of responsibility and she therefore initially declined to make the motion

20  for a one point downward adjustment.  After the District Judge determined that Defendant's sworn

21  statements during his guilty plea established his admittance of guilt and acceptance of responsibility,

22  however, the Government moved for the third point for acceptance of responsibility under U.S.S.G.

23  3E1.1(b).  *Transcript of Proceedings (#77), pg. 4:20 - pg. 5:6.*  Given these circumstances, the

24  Government will not be prejudiced if the indictment in this case is dismissed—so long as the

25  Defendant dismisses his appeal and accepts the finality of his conviction and sentence.  By contrast,

26

27          [6]The Court takes judicial notice of the fact that a grand jury session occurred on February 10, 2015 and indictments were returned that day.  *See Attachment 1,* In the Matter of the Partial Reports of the Special Grand
28  Jury the May 22, 2013 Term 13-2, Minutes of Court for February 10, 2015.

Defendant Brattin is exposed to an additional twenty-four month sentence for aggravated identity theft because his lawyer failed to deliver the executed post-plea agreement within a deadline that he was not clearly made aware of.

## CONCLUSION

Based on the foregoing, the undersigned magistrate judge is very tempted to recommend dismissal of the indictment if the Government is unwilling to voluntarily dismiss it subject to Defendant dismissing his appeal in Case No. 2:13-cr-00161-JAD-CWH. The Due Process Clause of the Fifth Amendment does not, however, give the court the general discretion to dismiss an indictment on grounds of reasonableness and fairness. Rather involuntary dismissal is justified only if the court can properly find that the additional charges filed against Defendant (1) are the result of vindictiveness by the prosecutor, (2) are outrageous and shock the judicial conscience, or (3) fall within the court's supervisory powers to dismiss an indictment in order to preserve the integrity of the judicial process.

The Court cannot find that Ms. Griswold or the United States Attorney's Office sought to punish Defendant Brattin for exercising a constitutional or statutory right. The Court finds on this record, that the additional charges were filed because the (1) parties did not reach a plea agreement prior to Defendant entering his guilty plea on February 2, 2015 and (2) because Defendant did not agree to the post-plea agreement within the Government's deadline, although that deadline was not adequately communicated to Defendant's counsel. This record also does not support a finding of outrageous government in violation of the Due Process Clause under the high standard required for such a finding. Nor does dismissal appear justified under the Court's supervisory power which requires a finding that the Government violated Defendant's constitutional or statutory rights. Defendant has not identified any constitutional or statutory right that was violated by the Government. Accordingly, but reluctantly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss for Vindictive Prosecution, Prosecutorial Misconduct, and Double Jeopardy Violation (#27) be **denied**.

. . .

24

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 26th day of January, 2016.

GEORGE FOLEY, JR.
United States Magistrate Judge

25

**ATTACHMENT 1**

RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

FILED
ENTERED

February 10, 2015

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY:                                    DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

IN THE MATTER OF THE PARTIAL          )       **MINUTES OF COURT**
REPORTS OF THE SPECIAL GRAND JURY     )
THE_____May 22, 2013_____TERM 13-2. )       DATE: February 10, 2015,
_____ )           at 1:18 - 1:20 p.m.

PRESENT:  The Honorable_____CARL W. HOFFMAN_____, United States Magistrate Judge

DEPUTY CLERK:  _Alana Kamaka_       REPORTER:  _Bonnie Terry_       COURTROOM: _3C_____

ASSISTANT UNITED STATES ATTORNEY:___Dan Cowig_____

PROCEEDINGS:

         Roll of the Regular Grand Jury is taken with **20** members present which constitutes a quorum.
The foreman/forewoman of the Grand Jury presented its partial report and indictments.

         On the motion of the United States Attorney, **IT IS ORDERED** that the said report and indictments
be filed.  There is **-0-** sealed indictment.

         On the motion of the United States Attorney, **IT IS ORDERED** that the terms of release as to each
defendant are fixed as indicated and that Bench Warrants and Summons  issue where indicated.

**2:14-cr-260-JAD-GWF**        **ALBERT FRANCIS PLANELLS**        **WARRANT**
*2nd Superseding*              **JESSE EARL JONES**               **LOCAL FEDERAL CUSTODY**
                              **MICHAEL PATRICK HUFFMAN**         **SUMMONS (PR BOND)**
                              **KENNETH ROY TARALDSEN**           **LOCAL FEDERAL CUSTODY**

         **IT IS ORDERED** that the Arraignment and Plea as to Defendants Jones, Huffman, and Taraldsen,
is set for Wednesday, February 18, 2015, at 3:00 p.m., in Courtroom 3A, before Magistrate Judge
George Foley, Jr.

         **IT IS FURTHER ORDERED** that the Arraignment and Plea as to Defendant Planells will be held at
the time of the Initial Appearance.

                              LANCE S. WILSON, Clerk
                              United States District Court

                              By  _/s/ Alana Kamaka_____
                                    Deputy Clerk